IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JASON FRUCHTMAN,                                  :
                                                 :
                        Plaintiff                :
                                                 :
            v.                                    :            C.A. No. 10-1105-LPS
                                                 :
TOWN OF DEWEY BEACH,                              :
WILLIAMS MEARS, and DIANA SMITH,                  :
                                                 :
                        Defendants.               :

---

Edward C. Gill, Esq., LAW OFFICE OF EDWARD C. GILL, P.A., Georgetown, DE

    Attorney for Plaintiff Jason Fruchtman

Megan T. Mantzavinos, Esq., Emily K. Silverstein, Esq., MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C., Wilmington, DE

    Attorneys for Defendants Town of Dewey Beach, William Mears, and Diana Smith

July 24, 2014
Wilmington, Delaware.

*[signature]*

**STARK, U.S. District Judge:**

Plaintiff Jason Fruchtman filed a complaint on December 16, 2010 against Defendants

Town of Dewey Beach ("Dewey Beach" or the "Town"), William Mears, and Diana Smith. (D.I.

1) Fruchtman seeks damages for violations of his rights under the First, Seventh, and Fourteenth

Amendments to the United States Constitution, as well as Article I, Sec. 4 of the Delaware

Constitution, all resulting from Defendants' attempts to regulate Plaintiff's placement of street

side merchandise displays. Pending before the Court are Plaintiff's motion for summary

judgment (D.I. 78) and Defendants' motion for summary judgment (D.I. 81).

## BACKGROUND

Plaintiff owns and operates Jeremiah's, a beach merchandise store that is located in

Dewey Beach, Delaware. Dewey Beach is a tourist destination during the summer months.

Jeremiah's is located in a three-story, mixed-use building on a corner lot located at the

intersection of Dagsworthy Street and the Coastal Highway. The upper stories of the building are

residential, while the beach store occupies approximately half of the ground level of the building.

Jeremiah's operates from Memorial Day through Labor Day, and during good weather

throughout the remainder of the year (in sum, approximately six to seven months of the year).

Plaintiff is the sole owner of Jeremiah's and has been displaying merchandise on the

outside of Jeremiah's since 2005 or 2006. This merchandise includes beach chairs, rafts, and

float toys which are placed along the sidewalks and also physically attached to the outside of the

building on all three stories. Jeremiah's is the only three-story building to display beach

merchandise on all stories.

In 2008, an amendment to the Dewey Beach Code ("the Code") included regulations

1

which limited the displays of outdoor merchandise such as Plaintiffs'. The Code specifies that displays be no taller than twelve feet, or higher than the first floor of a building, and that the displays should cover no more than 30% of the outside private property as determined by the frontage of the building on the Coastal Highway or 500 square feet, whichever is less. (D.I. 79 at 5; Dewey Beach Code § 185-27.1) Defendants assert that the purpose of the Code is to "promote the health, safety, morals, convenience, order, prosperity, and general welfare" of the inhabitants of Dewey Beach. (D.I. 85 at 2; Dewey Beach Code § 185-3)

According to Defendants, "Jeremiah's has consistently violated the Town of Dewey Beach Zoning Code since 2006 by virtue of its excessive outdoor merchandise displays." (D.I. 85 at 2) Plaintiff has been ticketed on numerous occasions for violations of the Code,[1] and other merchants have been charged with similar violations. (*Id.* at 4) Defendants explain that "it was only after continually ignoring verbal warnings that Mr. Mears [a Town official] would start issuing citations . . . [and] Plaintiff was cited as often as he was because he continually failed to heed the warnings Mr. Mears gave him." (*Id.*) Plaintiff has not only created aesthetic concerns for the Town, but the "excessive merchandise displays outside Jeremiah's block the sidewalk [and cause pedestrians] to have to walk out into the highway;" "there are also concerns about the merchandise Plaintiff suspends in the air falling down." (*Id.* at 3)

Although not entirely clear, it appears that Plaintiff is (or at least was) alleging the following claims: (i) violation of his right to Free Speech under the First Amendment to the United States Constitution and under the Delaware Constitution; (ii) violation of his right to a

---

[1] Plaintiff was ticketed once in 2006, twice in 2007, once in 2008, three times in 2009, once in 2010, and twice in 2012. Only the 2010 and 2012 violations remain pending, as the others have been dismissed.

civil jury trial under the Seventh Amendment to the United States Constitution;[2] (iii) violation of

his right to Due Process under the United States and Delaware Constitutions; (iv) breach of

contract;[3] (v) violation of the Equal Protection Clause of the United States and Delaware

Constitutions; and (vi) violation of the "grandfather clause" he contends is part of the Dewey

Beach Code.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed

must be supported either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motion only), admissions, interrogatory answers, or

other materials," or by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

---

[2]This claim appears to arise from the fact that the Town changed the classification of Code violations from criminal offenses to civil offenses. Plaintiff makes no reference to this claim in his brief in support of his motion and the record reveals no basis for granting him any relief on it. From his brief answering Defendants' motion for summary judgment, it appears that Plaintiff is "abandon[ing]" this claim. (D.I. 84 at 2)

[3] To the extent Plaintiff is asserting a claim for breach of an agreement between himself and the Town (a claim on which only Defendants have moved for summary judgment), it fails, as Plaintiff has presented no evidence that Defendants breached the agreement. (*See* D.I. 82 at 16-17) In answering Defendants' motion, Plaintiff states he is withdrawing "any specific claim under the agreement." (D.I. 84 at 14)

fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for

trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)

(stating party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations

omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary

judgment is mandated "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the

non-moving party's position is insufficient to defeat a motion for summary judgment; there must

4

be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477

U.S. at 252.

## DISCUSSION

### I.   Plaintiff's Motion

Plaintiff seeks summary judgment on the grounds that: (1) Defendants violated his

commercial free speech rights; (2) the Code provisions enforced by Defendants are void for

vagueness; (3) Defendants selectively enforced the Code provisions as against him; and (4) his

displays are "grandfathered in" and therefore do not violate the Code.

### A.   Commercial Speech

Plaintiff claims that the Code and its enforcement by Defendants violates his First

Amendment rights.  (D.I. 79 at 11)  However, the Court concludes that the Code serves to

regulate Plaintiff's commercial speech, in a content-neutral fashion, and directly advances the

Town's substantial interests in safety and community aesthetics.  Thus, Plaintiff's commercial

speech rights have not been violated. *See generally Congregation Kol Ami v. Abington Twp.*,

309 F.3d 120, 135 (3d Cir. 2002) ("[L]ocal zoning ordinances are subject to forgiving standards

of review.").

The speech at issue is commercial speech, which is defined as "an expression related

solely to the economic interest of the speaker and its audience." *Central Hudson Gas & Elec.

Corp., v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  The Supreme Court affords

"lesser protection to commercial speech than to other constitutionally guaranteed expression" and

allows restrictions on it where 1) the "restriction . . . directly advance[s] the state interest

involved," and 2) the restriction is "narrowly drawn." *Id.* at 563-65.

In a challenge to regulation of commercial speech, the Court must consider: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted government interest is substantial; (3) whether the regulation directly advances the government interest asserted; and (4) whether the regulation is not more extensive than is needed to serve that interest. *Id.* at 566.

There is no dispute with respect to the first prong of the four-part *Central Hudson* test. With respect to the second prong, the Supreme Court has stated that "traffic safety and the appearance of the city-are substantial governmental goals." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981). Here, these goals are clearly laid out in the purpose section of the Code. (D.I. 85, Ex. B at 9) Though Plaintiff claims that the asserted governmental interests of safety and aesthetics are merely pretextual, Plaintiff has cited no evidence to support his claims. Plaintiff's allegations, thus, fail to undermine the Code provision based on the second prong of the *Central Hudson* test.

Plaintiff also challenges Defendants on the third prong of the test, contending that the Code does not directly advance the asserted government interest. The Supreme Court has shown great deference to local lawmakers in regards to safety issues regarding signs where there is nothing to suggest that lawmakers' judgments were unreasonable. *See Metromedia*, 453 U.S. at 509 (holding that Court should not trespass on local problems without showing that regulations are manifestly unreasonable, despite meager record of link between traffic safety problems and billboards). The same reasoning supports the Town's claims regarding aesthetics. The Supreme Court in *Metromedia* noted that aesthetic judgments are "necessarily subjective," and "must be carefully scrutinized to determine if they are only a public rationalization of an impermissible

6

purpose." *Metromedia*, 453 U.S. at 510.

Plaintiff argues there is little or no evidence supporting Dewey Beach's claim that

banning displays above the first story of a building or restricting the size of displays on outside

private property increases safety. (D.I. 86 at 1) Defendants respond that displays above the first

floor are distracting to drivers, and also may fall and injure pedestrians. (D.I. 85 at 7 (citing

evidence); D.I. 85-1 at 17, 31) In addition, Defendants state that the excessive size of Plaintiff's

displays blocks sidewalks and forces pedestrians to walk on the highway. (D.I. 85 at 7; D.I. 85-1

at 17, 31)

Plaintiff has alleged that the Town is attempting to benefit his business competitors under

the guise of safety and aesthetics. Plaintiff has cited no evidence to support his allegations. That

Defendants consider displays of merchandise to be harmful to the general appearance of the

Town is not "so unusual as to raise suspicions in itself." *Metromedia*, 453 U.S. at 510.

Plaintiff cites *Citizens United for Free Speech II v. Long Beach Township Board of*

*Commissioners*, 802 F. Supp. 1223 (D.C.N.J. 1992), as support for his assertion that aesthetics

alone is not sufficient to support regulations of commercial speech. However, the regulation

challenged in that case, restricting the display of "for rent" signs, was not content-neutral, given

that "for sale" signs were not targeted. Here, the restrictions apply to all displays of merchandise,

regardless of content.

Finally, as to the fourth prong, Plaintiff provides insufficient evidence to support a

finding that the Code is more extensive than needed to achieve its purposes.

The Court concludes that there is no genuine issue of material fact as to whether

Defendants' regulation of displays violates Plaintiff's commercial free speech rights, as the Code

7

provisions at issue advance substantial and legitimate government interests, are content-neutral, and are narrowly drawn. Accordingly, Plaintiff's motion for summary judgment will be denied, and Defendants' cross-motion for summary judgment will be granted.[4]

### B. Vagueness

Plaintiff next challenges the Code as void for vagueness. A law is void for vagueness if it: "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000), *aff'd*, 559 U.S. 460 (2010)). As the Supreme Court has stated, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). In addition, "[l]aws with civil consequences receive less exacting vagueness scrutiny" than criminal laws. *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir. 2008).

Plaintiff cites testimony from Gordon Elliott, a former police officer and the Town manager from 1984 through 2009, stating that the Code is difficult to understand. (D.I. 79 at 16) Plaintiff further claims that Mears' testimony reveals an incorrect and irrational understanding of the Code. (D.I. 79 at 15-16) Finally, Plaintiff argues that the Mayor of Dewey Beach also has a

---

[4]To the extent Plaintiff is asserting his free speech claim under the Delaware Constitution, summary judgment must be granted to Defendants on this claim as well. *See Langdon v. Google*, 474 F. Supp.2d 622, 630 (D. Del. 2007) ("Defendants correctly note that the free press provision of the Delaware Constitution has the same scope as the First Amendment.").

faulty understanding of the Code, based on her testimony that the Code bans displays on side streets. (*Id.*)

However, as Defendant notes, certain Mears testimony on which Plaintiff relies (regarding displays on side streets) was not in reference to the present version of the Code. (D.I. 85 at 12) The citation Plaintiff received in July 2010 uses the correct formulation of the Code, showing that the authorities understand the Code's formula. (D.I. 85 at 13) The language of the Code is relatively straightforward in banning displays above the first floor of buildings and using a simple mathematical formula to deduce the useable square footage for outside displays. (D.I. 85 at 12) Mears explained the Code calculation of Plaintiff's allowable display space: Jeremiah's has 52 feet of Coastal Highway frontage, and 5.6 feet of sidewalk depth (being measured from the front of the building to the property line). The square footage of this area is 291.2 square feet. Since the Code limits displays to 30% of this available space, Plaintiff can occupy 87.36 square feet with displays. (*See* D.I. 85 at 12) There is no additional allowance for space along the Dagsworthy side street, and displays erected on that side of Plaintiff's building count toward his 87.36 square foot allotment. (*See* D.I. 85 at 9)

Because this Code clearly defines the limitations on displays and provides Plaintiff and others fair warning of the conduct prohibited, Plaintiff's motion for summary judgment on these grounds will be denied, and Defendants' motion for summary judgment will be granted.

## C.   Equal Protection

Plaintiff claims that Defendants have violated his rights under the Equal Protection Clause of the U.S. Constitution because they have unfairly targeted him for violation of the Dewey Beach Code. (D.I. 79 at 17) In order to establish a claim of selective enforcement,

9

Plaintiff must show: "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." *Adams v. Officer Eric Selhorst*, 449 Fed. Appx. 198, 203-04 (3d Cir. Oct. 26, 2011). To satisfy the first prong, Plaintiff must show "an extremely high degree of similarity between its circumstances and those of others who were treated differently." *New Castle Cnty. v. Wilmington Hospitality, LLC*, 963 A.2d 738, 743 (Del. 2008) (internal citations omitted); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (stating Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"). In other words, Plaintiff must identify another party who was both (i) "*prima facie* identical in all relevant respects" but (ii) treated differently. *New Castle Cnty.,* 963 A.2d at 743. Then, at the second prong of the test, Plaintiff must also show that the Town "lacked any rational basis" for treating him differently from how it treated those who were similarly situated to him. *Id.* At this second prong, Plaintiff must also identify a fundamental right which has been violated.

Considering the first prong, courts have explained that generally whether a plaintiff was treated differently from others similarly situated presents "a fact question for the jury, but summary judgment is appropriate where it is clear that no reasonable jury could find the similarly situated prong met." *New Castle Cnty.*, 963 A.2d at 743; *see also Young v. Twp. of Coolbaugh*, 276 Fed. Appx. 206 (3d Cir. April 25, 2008) (finding summary judgment was properly entered where plaintiff failed to produce any evidence that he was similarly situated to others that were treated differently). Here, the Court finds that the prong one inquiry does present genuine disputes of material fact. Defendants contend that Plaintiff is not similarly situated to the other

10

businesses in the Town because: (1) Plaintiff's business is in a three-story building while the other businesses only have one story; (2) Plaintiff's business is in a mixed-use structure; and (3) Plaintiff's business is located on a corner property with frontage on a side street. (D.I. 85 at 15-16) Plaintiff responds by emphasizing that he was the only one ticketed on numerous occasions, at a time when most of the businesses in the Town were in violation of the Code. (*Id.*) Defendants reply by showing that numerous other businesses were charged with violations of the Code, but Mears' policy was to issue verbal warnings to allow for voluntary compliance. (D.I. 85 at 14-15) It is undisputed that Plaintiff was the only business to fail repeatedly to act on the warnings, thus resulting in numerous citations. (D.I. 85 at 15) Finally, Defendants note that even if disparity of treatment is established, the Town can still demonstrate a rational basis for its actions. (D.I. 82 at 15) The Town targeted Plaintiff for enforcement because he was the most prominent violator of the Code, and his non-compliance incited other business owners to violate the law as well. (D.I. 82 at 16) In short, on the record before the Court, a reasonable factfinder could find that Plaintiff was treated differently than others who were similarly situated or, alternatively, could conclude that he was not.

Turning to the second prong, the Court concludes that Plaintiff has failed to provide evidence from which a reasonable factfinder could find that any selective treatment he suffered was based on an unjustifiable standard (such as to prevent his exercise of a fundamental right). Instead, based on the record evidence, a reasonable factfinder would find that the Code (and the Town's enforcement of it) was intended to promote safety and aesthetics. *See generally Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981) ("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of

11

achieving a satisfactory quality of life."). Moreover, Plaintiff's asserted right is his right to free

speech, but "it is generally unnecessary to analyze laws which burden the exercise of First

Amendment rights . . . under the equal protection guarantee, because the substantive guarantees

of the Amendment serve as the strongest protection against the limitation of these rights. . . . If a

law passes muster under the First Amendment it is also likely to be upheld under the Equal

Protection clause." *Hill v. City of Scranton*, 411 F.3d 118, 126 (3d Cir. 2005) (internal citations

and quotation marks omitted). The Court has found that Plaintiff's First Amendment rights were

not violated, and neither were his Equal Protection rights.

Hence, again, Plaintiff's motion for summary judgment will be denied and Defendant's

motion for summary judgment will be granted.

### D.    No "Grandfathering" Protects Plaintiffs' Displays

Plaintiff claims that Defendants should be enjoined from enforcing the Dewey Beach

Code against him because his displays predate the current Code and should be "grandfathered

in." Plaintiff began displaying goods outside his business in 2005 or 2006, well before the

adoption of the current version of the Dewey Beach Code. (D.I. 79 at 19) The current Code

specifically identifies "non-conforming uses" that are exempt, but there is no exemption for

temporary or intermittent signs (or displays of merchandise). (D.I. 85 at 16; D.I. 85-1 at 14) Nor

does the fact that Plaintiff's displays are seasonal in nature bring them within the scope of any

Code exemption. And Plaintiff cited any authority for this Court to find a general constitutional

doctrine of grandfathering that helps Plaintiff.[5]

---

[5]In his brief supporting his own motion, Plaintiff fails even to cite the "grandfather
clause" on which he is relying. To the extent it is Dewey Beach Code § 185-33, Plaintiff cannot
prevail, because this provision applies to "[a]ny *sign* in existence as of the passage of this

## II.    Defendants' Motion

In addition to the grounds already discussed above, Defendants offer two other bases for granting them summary judgment.  Defendants contend that Diana Smith is entitled to summary judgment on all counts because Plaintiff has failed to allege or provide evidence that Smith took any action to deprive him of his rights.  (*See* D.I. 82 at 18)  Defendants further argue, "in the alternative, were this court to determine that there is enough evidence to establish a genuine issue of material fact, Defendants are immune from liability pursuant to the qualified immunity doctrine, and for this reason are entitled to summary judgment on all counts."  (*Id.* at 19)  Because the Court will grant Defendants' summary judgment motion on the grounds already discussed in connection with Plaintiff's motion, which will leave no claims pending against any Defendant, there is no need to address these other arguments presented by Defendants.

### CONCLUSION

The Court will enter an appropriate order.

---

chapter" (emphasis added), and does not relate to Plaintiff's display of merchandise. Furthermore, while Plaintiff finds support for his position in the testimony of witness Mears (*see* A198 (testifying that half of the Town's *signs* were grandfathered)), he has failed to show a genuine dispute of material fact, particularly as Mears also explained that while signs were grandfathered merchandise *displays* were not (*see* D.I. 85-1 Ex. D at 82-83).

13